UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RENU GUPTA<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF BRIDGEPORT,<br><br>    Defendant. | No. 3:14cv00112 (MPS) |

**MEMORANDUM AND ORDER**

Plaintiff, Renu Gupta ("Ms. Gupta"), brings this action against the Defendant, the City of Bridgeport (the "Defendant"). (Compl. [Dkt. # 1].) Ms. Gupta's Complaint alleges that the Defendant discriminated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, *et seq.* because of her Indian national origin and Indian ethnicity. Specifically, Count One alleges that the Defendant created a hostile work environment, Count Two alleges that the Defendant discriminated against her in failing to promote her, and Count Three alleges that the Defendant discriminated against her in disciplining her. (*Id.*) The Defendant has moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6), arguing that none of these counts states a claim upon which relief can be granted. (Def.'s Mot. to Dismiss [Dkt. # 15].) For the reasons that follow, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.

**I.    BACKGROUND**

Ms. Gupta alleges the following facts, which are accepted as true for the purposes of this motion. Ms. Gupta was born in India and is of Indian ethnicity. (Compl. [Dkt. #1] ¶ 9.) In

November 2009, Ms. Gupta began working for the Defendant as a grants writer. (*Id*. ¶ 14.) Ms. Gupta alleges that the Defendant "intentionally overlooked [Ms. Gupta] for advancement when compared to the advancement of similarly situated non-Indian employees" (*Id*. ¶ 16), "subjected [her] to meritless disciplinary actions on account of her ethnicity and national origin" (*Id*. ¶ 17), and "created a hostile environment within which the plaintiff was made to work." (*Id*. ¶¶ 26-27.)

### A. Failure to Promote

Ms. Gupta alleges that in January 2010, she "expressed an interest to her supervisor, Alanna Kabel, to be appointed to a vacant position with more responsibility and a higher salary." (*Id*. ¶ 16a.) Ms. Gupta satisfied the basic qualifications for the job, which required a master's degree. (*Id*. ¶¶ 16b-c.) Alanna Kabel ("Ms. Kabel"), however, informed Ms. Gupta that the position had already been filled by Kelly McDermott, a non-Indian employee. (*Id*. ¶ 16b.) The requirements for the position were lowered so that Ms. McDermott could qualify for the position with only a bachelor's degree. (*Id*. ¶ 16d.) "In [the] face of the favored treatment of Ms. McDermott, the plaintiff withdrew her application." (*Id*. ¶ 16e.)

In February 2010, Ms. Gupta expressed interest in another position, one related to her background in grants management. (*Id*. ¶ 16f.) But Ms. Kabel informed Ms. Gupta that "Tyler Fairbairn, a non-Indian candidate, who had no experience at all, had already been selected for the position." (*Id*.)

When Ms. Kabel resigned a year later, in February 2011, the Defendant appointed Alexandra McGoldrick, a non-Indian, to replace Ms. Kabel as Director of the Central Grants Department. (*Id*. ¶ 16h.) The Defendant never considered Ms. Gupta for the position. (*Id*.)

Ms. Gupta further alleges that she requested promotion to a higher-paid position that involved processing contracts, monitoring finances, and evaluating grants. (*Id*. ¶¶ 16j, 16l.)

2

Although Ms. Gupta had superior qualifications, the Defendant promoted Isolina Dejesus—a non-Indian with no relevant background—to the position in June 2012. (*Id*. ¶¶ 16j-m.)

Finally, in September 2013, when Ms. McGoldrick resigned, the Defendant hired a person with no background in grants management, Christina B. Smith ("Ms. Smith"), to replace Ms. McGoldrick as the Director of the Central Grants Department, "and yet again denied the promotional opportunity to [Ms. Gupta]." (*Id*. ¶ 16n.)

### B. Disciplinary Actions

In July 2010, the Defendant denied Ms. Gupta's request for accrued compensation time, claiming that Ms. Gupta's compensation time had expired because it had not been used within 60 days of accrual. (*Id*. ¶ 17f.) Ms. Gupta alleges that non-Indian grant writers did not lose their compensatory time after 60 days. (*Id*. ¶ 17g.) Ms. Gupta complained about this unfair practice to the Defendant. (*Id*. ¶ 17h.) In response, the Defendant revoked certain of Ms. Gupta's duties, including "representing grants in front of common council and their committees," and blocked her access to the internet. (*Id*.)

On September 30, 2010, the Defendant issued Ms. Gupta a written warning for "[c]ommunicating in an aggressive tone and behavior that disrupts the work." (*Id*. ¶ 17i.) Ms. Gupta alleges that this "warning was issued without merit and related to [Ms. Gupta's] disputing the false accusation made by her immediate supervisor that" she did not complete her work on time. (*Id*. ¶ 17j.)

In November 2011, the Defendant issued Ms. Gupta another written warning, this time for assigning work to an intern without prior written authorization. (*Id*. ¶ 17k.) Ms. Gupta alleges that the warning was "without merit" (*Id*. ¶ 17m) and the Defendant "had never issued a written warning to any other employee for similar behavior." (*Id*. ¶ 17l) Further, Ms. Gupta alleges that

3

her supervisor, Ms. McGoldrick, "screamed at [her] and treated her in a degrading manner, unlike the manner in which she treats non-Indian employees," when she issued the warning. (*Id.* ¶ 17n.)

On January 13, 2012, the Defendant suspended Ms. Gupta for ten days without pay. (*Id.* ¶ 17o.) The suspension was based on allegations that Ms. Gupta had submitted a "grant contract" to the State of Connecticut without proper authorization, falsified her timecard, left her work area without authorization, violated work policies of tardiness and attendance, and had been disruptive and insubordinate. (*Id.* ¶¶ 17p, 17r.) According to Ms. Gupta, this suspension was unwarranted and more severe than discipline imposed on non-Indian employees. (*Id.* ¶¶ 17p-q.)

On June 11, 2012, the Defendant suspended Ms. Gupta, with pay, pending an investigation into an accusation that she had assaulted her supervisor, Isolina Dejesus. (*Id.* ¶ 17t.) The Defendant's Office of Labor Relations held a hearing concerning Ms. Gupta's suspension on June 13, 2012, and "made findings that substantially supported [Ms. Gupta's] allegations of discriminatory treatment at the hands of Alexandra McGoldrick." (*Id.* ¶ 17v.)

On February 6, 2013, Ms. Gupta was again suspended, with pay, pending an investigation into the late submission of a grant. (*Id.* ¶ 17w.) According to Ms. Gupta, the suspension was baseless because Ms. McGoldrick was responsible for the grant's lateness. (*Id.* ¶ 17x.) Further, Ms. Gupta alleges that Ms. McGoldrick "called the plaintiff to her office and literally threw the letter of suspension at the plaintiff" and told her "that she needed to immediately vacate the building." (Compl. ¶ 17z.) When Ms. Gupta responded by stating that she wanted her union representative present, Ms. McGoldrick, "screamed at [her] to 'get out' and . . . escorted her out of the workplace." (Compl. ¶¶ 17aa-bb.)

Finally, Ms. Gupta alleges that in August 2013, the Defendant suspended her for three weeks, without pay, for failing to submit a grant on time and submitting the grant without a required form. (*Id*. ¶ 17cc.) According to Ms. Gupta, the grant's "[l]ack of timely submission was also Ms. Alexandra McGoldrick's fault," and Ms. Gupta had prepared the required form, but Ms. McGoldrick had removed the form and blamed its absence on Ms. Gupta. (*Id*. ¶ 17dd-ee.)

### C. Procedural History

On February 26, 2013, Ms. Gupta filed an administrative complaint with the State of Connecticut Commission on Human Rights and Opportunities ("CHRO") and the United States Equal Employment Opportunity Commission ("EEOC").[1] (Compl. [Dkt. #1] ¶ 5a; Def.'s Mem. Mot. Dismiss [Dkt. # 16] at 6 n. 8.) The administrative complaint alleged incidents of discriminatory discipline beginning September 30, 2010, through February 6, 2013; failure to promote Ms. Gupta in January 2010, February 2010, February 2011, and June 2012, and continuing harassment beginning on July 1, 2010. (Def.'s Mem. Mot. Dismiss Ex. B [Dkt. # 16-1].) Ms. Gupta also alleged illegal age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), and violations of Conn. Gen. Stat 46a-58(a) and 46a-60(a)(1). (*Id.* at 1-2.) Her Complaint in this Court makes no mention of these ADEA and state law claims. The EEOC and the DOJ issued their Notice of Right to Sue letters on October 22, 2013 (Compl. [Dkt. # 1] at 20), and December 13, 2013 (Def.'s Mem. Mot. Dismiss Ex. A [Dkt. # 16-1] at 2), respectively.[2] Ms. Gupta filed her Complaint in this Court on January 29, 2014.

---

[1] The Court takes judicial notice of Ms. Gupta's administrative complaint. *See Bentley v. Dennison,* 852 F.Supp.2d 379, 382 n. 5 (S.D.N.Y.2012) ("Judicial notice of public records is appropriate—and does not convert a motion to dismiss into a motion for summary judgment—because the facts noticed are not subject to reasonable dispute and are capable of being verified by sources whose accuracy cannot be reasonably questioned.").

[2] The Court takes judicial notice of these letters.

## II.     LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), the Court must determine whether Ms. Gupta has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570. Under *Twombly*, the Court accepts as true all of the complaint's factual allegations – but not conclusory allegations – when evaluating a motion to dismiss. *Id*. at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant defendants['] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010).

To survive a motion to dismiss, a plaintiff claiming employment discrimination is not required to allege a prima facie case under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513, (2002). Still, "even if pleading a prima facie case is not required[,]" *Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012) (summary order), a plaintiff "must plead facts that render his claim facially plausible." *Stewart v. City of New York*, No. 11 CIV. 6935 CM, 2012 WL 2849779, at *6 (S.D.N.Y. July 10, 2012). "The elements of a prima facie discrimination claim are nonetheless relevant to the determination of whether a complaint provides a defendant with fair notice and contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Chacko v. Worldwide Flight Servs., Inc.*, No.

6

08-CV-2363 (NGG) (JO), 2010 WL 424025, at *3 (E.D.N.Y. Feb. 3, 2010) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (*quoting Twombly,* 550 U.S. at 557).

On a motion to dismiss, the Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993). The Court may consider a plaintiff's filings with the CHRO and the EEOC "either as matters referenced in the complaint or as public records subject to judicial notice." *Colon v. The S. New England Tel. Co.*, No. 3:09-CV-802CSH, 2009 WL 4730480, at *1 (D. Conn. Nov. 30, 2009).

### III.   DISCUSSION

#### A.  Timeliness and Exhaustion

As set forth below, the Court finds that certain allegations in Ms. Gupta's Complaint are not actionable because they are time-barred, but otherwise rejects Defendant's arguments concerning exhaustion.

##### 1.   Timeliness

The Defendant claims that various instances of discrimination alleged in Ms. Gupta's Complaint may not be considered because they were not filed within the 300-day administrative filing period. (Def.'s Mem. Mot. to Dismiss [Dkt. # 16] at 6.) "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *see* 42 U.S.C. § 2000e-5(e)(1). In states that have their own anti-discrimination laws and enforcement agencies, the filing deadline for employment discrimination charges is 300 days "after the alleged unlawful employment action occurred[.]" 42 U.S.C. § 2000e-5(e)(1). Because

Connecticut has its own anti-discrimination agency, the 300-day limitation applies to Ms. Gupta's claims. *O'Hazo v. Bristol-Burlington Health Dist.*, 599 F. Supp. 2d 242, 252 (D. Conn. 2009).

"The timeliness requirement of Title VII is analogous to a statute of limitations. As such, it is meant to put the adversary on notice to defend within a specified period and to promote the right to be free of stale claims." *McPherson v. N.Y. City Dep't of Educ.,* 457 F.3d 211, 214 (2d Cir.2006) (internal citation and quotation marks omitted). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id*. Accordingly, this Court must examine each allegation of discrete discriminatory action to determine if the allegation is time-barred.

Ms. Gupta filed her administrative complaint on February 26, 2013. (Def.'s Mem. Mot. to Dismiss Ex. B [Dkt. # 16-1] at 1.) Therefore, the following alleged discriminatory acts that occurred more than 300 days prior to February 26, 2013 are untimely and are not actionable[3]: (1) the denial of promotion, January 2010; (2) the denial of promotion, February 2010; (3) the denial of compensation time, July 2010; (4) the written warning, September 30, 2010; (5) the denial of promotion, February 2011; (6) the written warning, November 2011; and (7) the suspension without pay, January 13, 2012. Thus, any claims based on these allegations are DISMISSED. Ms. Gupta does not contest this, and concedes that for Count Two, only the alleged failures to

---

[3] May 2, 2012, is 300 calendar days before February 26, 2013. The 300-day filing deadline does not "bar an employee from using the prior acts as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113.

promote her in June of 2012 and in September of 2013 are actionable, and that for Count Three, only the alleged suspensions with pay on June 11, 2012, and February 6, 2013, and the alleged suspension without pay in August 2013 are actionable. (Pl's Opp. Br. [Dkt. # 26] at 9.)

### 2. Exhaustion of Administrative Remedies

Defendant also argues that Plaintiff has failed to exhaust her administrative remedies for alleged incidents of discrimination that occurred *after* the filing of her EEOC and CHRO administrative complaint on February 26, 2013. This includes the September 2013 failure to promote and the August 2013 suspension without pay. "A Title VII claimant may bring suit in federal court only if he has filed a timely complaint with the EEOC and obtained a right-to-sue letter. The federal courts generally have no jurisdiction to hear claims not alleged in an employee's EEOC charge." *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 613 (2d Cir. 1999) (internal citations omitted). "This exhaustion requirement . . . is designed to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Id.* at 614 (internal citations and quotation marks omitted). "Nonetheless, claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Id*. Conduct that occurs after the plaintiff filed her administrative complaint is "reasonably related" to the conduct in an administrative charge if:

> (1) the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; (2) it alleges retaliation for filing the EEOC charge; or (3) the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."

*Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (quoting *Butts v. City of N.Y. Dep't of Hous. Preservation and Dev.,* 990 F.2d 1397, 1402-03 (2d Cir.1993)).

In her administrative complaint, Ms. Gupta alleged that the Defendant discriminated against her on the basis of her ethnicity and national origin in creating a hostile work environment, disciplining her, and failing to promote her. (Def.'s Mem. Mot. Dismiss Ex. B [Dkt. # 16-1] at 1.) In the Complaint she filed in this Court on January 29, 2014, Ms. Gupta alleged two additional instances of discrimination. First, Ms. Gupta alleges that, "[i]n August 2013, the defendant suspended [her] for 3 weeks without pay for not submitting a grant in time and failing to submit a required form." (Compl. [Dkt. #1] ¶ 17cc.) She further alleges that she had prepared the form, but that the Defendant removed the form from the grant and that the "[l]ack of timely submission was also Ms. Alexandra McGoldrick's fault." (*Id*. ¶¶ 17dd-ee.) Second, Ms. Gupta alleges that in September 2013, she was overlooked for a promotion when Christina B. Smith, who was less qualified than she, was hired to be the Director of the Central Grants Department. (*Id*. ¶ 16n.)

Ms. Gupta argues that these two additional allegations of discriminatory conduct in 2013 are reasonably related to the allegations in her administrative complaint. Specifically, Ms. Gupta argues that because her administrative complaint alleged discriminatory discipline and denial of promotion, "[t]he August 2013[] suspension without pay and the September failure to promote is exactly the same conduct which the EEOC would have been investigating with regard to the plaintiff's first complaint," and therefore "would reasonably be expected to grow out of the plaintiff's original charge of discrimination." (Pl.'s Opp. Br. [Dkt. # 26] at 10-11.) Moreover, Ms. Gupta submits that the August and September 2013 incidents were "further incidents of

discrimination which were carried out in exactly the same manner as the claims she asserted in her EEOC charge." (*Id.* at 10.) [4]

The Defendant argues that neither incident is "reasonably related" to the allegations contained in Ms. Gupta's administrative complaint. Specifically, Defendant argues that Ms. Gupta's administrative complaint describes all of the alleged discriminatory discipline actions prior to August 2013 as "meritless." (*See* Admin. Compl (Gupta Aff.) [Dkt. # 16-1] ¶¶ 10b ("without merit"), 10c ("without merit"), 10d ("falsely claiming"), 10e ("knowingly false accusation"), 10e ("charges . . . are baseless").) In contrast, Defendant argues, Ms. Gupta does not allege that the August 2013 discipline was meritless. In fact, she concedes that the suspension was premised—at least in part—on her own misconduct. (*See* Compl. [Dkt. # 1] ¶ 17ee ("Lack of timely submission of grant was *also* Ms. Alexandra McGoldrick's fault.") (emphasis added).) Defendant further argues that the August 2013 suspension was not carried out in "precisely the same manner" as the other suspensions, which were *with* pay and pending the outcome of investigations. *See Alfono*, 294 F.3d at 382 (emphasizing "the requirement that the later discrimination be carried out in 'precisely' the same manner alleged in the EEOC complaint."). However, Defendant ignores Ms. Gupta's allegation that Defendant suspended her on January 13, 2012, for ten days, *without pay*, for violating city work rules. (Admin. Compl. (Gupta Aff.) [Dkt. # 16-1] ¶ 10d.)[5] Moreover, the suspension on February 6, 2013, was for failure to submit a grant on time (Admin. Compl (Gupta Aff.) [Dkt. # 16-1] ¶ 10e), and the

---

[4] Because Ms. Gupta does not allege that these later acts were retaliatory, the Court does not address the second exception.

[5] The fact that the January 13, 2012 incident is time-barred does not mean that it would not have comprised part of the EEOC investigation. To the contrary, it is likely that the EEOC would have considered alleged discriminatory acts falling outside the 300-day window as evidence of background or intent. *See e.g., Morgan*, 536 U.S. at 102.

August 2013 suspension also involved failure to submit a grant on time. (Compl. [Dkt. # 1] ¶ 17cc.) Therefore, drawing all inferences in favor of Ms. Gupta, the Court concludes that the August 2013 suspension is "reasonably related" to the allegations Ms. Gupta included in her administrative complaint because it "would fall within the reasonably expected scope of an EEOC investigation of the charges" of discriminatory discipline. *Alfano*, 294 F.3d at 381 (first exception); *Boimah v. Cumberland Farms, Inc.*, No. 03-CV-0121, 2005 WL 3671628, at *4 (N.D.N.Y. Dec. 30, 2005) ("'Reasonably related' means that despite the claimant's having failed to specify the precise charge, the EEOC likely would have investigated the conduct complained of anyway.").

Defendant also argues that the September 2013 failure to promote claim is not reasonably related to the failure to promote allegations contained in Ms. Gupta's administrative complaint. Defendant argues that Ms. Gupta's allegation that she was not considered for a promotion in September 2013 (Compl. [Dkt. # 1] ¶ 16n) is unlike the allegations in her administrative complaint because Ms. Gupta does not allege that she "requested" the September 2013 promotion, applied for the position, or that she even knew of the position's existence before it was given to another employee. (Def.'s Mem. Mot. Dismiss Ex. B [Dkt. # 16-1] at 4-6.) Ms. Gupta specified in her administrative complaint that she "requested" promotion to, or expressed interest in, other positions before they were given to non-Indian applicants. (*See* Admin. Compl (Gupta Aff.) [Dkt. # 16-1] ¶¶ 9a ("expressed an interest to her supervisor"), 9f ("expressed her interest in another open position"), 9kj ("requested to be promoted").) Defendant ignores, however, that the administrative complaint also does not state that Ms. Gupta was aware of, or applied for, the position that became available when Ms. Kabel resigned. (Admin. Compl (Gupta Aff.) [Dkt. # 16-1] at ¶ 9f ("In February of 2011, upon the resignation of the plaintiff's

supervisor, Ms. Kabel, the defendant appointed a non-Indian candidate, Alexandra McGoldrick, to take over for Ms. Kabel, without ever considering the plaintiff.").) The omission of such requests for promotion or expressions of interest from the Complaint's description of the September 2013 failure to promote does not necessarily suggest that Ms. Gupta *never* expressed interest in her supervisor's position.[6] Defendant also notes that the Complaint does not allege that the position in September 2013 was given to a non-Indian candidate, while her administrative complaint specified that the other positions were given to non-Indian candidates. (*See* Admin. Compl. (Gupta Aff.) ¶¶ 9b, 9f, 9h, 9j.) However, the omission of the words "non-Indian" in the Complaint's description of the September 2013 failure to promote does not necessarily suggest that Christina B. Smith is Indian. Paragraph 16 of the Complaint introduces all of the alleged failures to promote, and states generally that, "[c]ontinuously since her hiring . . . the plaintiff has been intentionally overlooked for advancement when compared to . . . similarly situated non-Indian employees." (Compl. [Dkt. #1] ¶ 16.) It is reasonable to infer from this general introductory paragraph that Ms. Smith is not Indian. Drawing all inferences in favor of Ms. Gupta, the Court concludes that the alleged September 2013 incident is reasonably related to the charges of discriminatory failure to promote included in Ms. Gupta's administrative complaint because the claim would fall within the reasonably expected scope of an EEOC investigation of failure to promote Ms. Gupta.

Finally, the EEOC had an opportunity to investigate the August 2013 suspension and the September 2013 failure to promote because its investigation remained ongoing at these times. The EEOC and the DOJ issued their Notice of Right to Sue letters on October 22, 2013 (Compl. [Dkt. # 1] at 20), and December 13, 2013 (Def.'s Mem. Mot. Dismiss Ex. A [Dkt. #16-1] at 2),

---

[6] The distinct pleading requirement of a specific application for each position is discussed *infra* in Part III.C.

13

respectively. *See Dargento v. Bally's Holiday Fitness Centers,* 990 F.Supp. 186, 193 (W.D.N.Y.1997) ("claims may still be considered 'reasonably related' even if the EEOC did not investigate the charge, so long as it had the opportunity to do so."); *Boimah v. Cumberland Farms, Inc.*, No. 03-CV-0121, 2005 WL 3671628, at *4 (N.D.N.Y. Dec. 30, 2005) ("It is of no moment whether the EEOC actually investigated the claim; it is the opportunity to do so that is key."), *aff'd* 239 Fed.Appx. 632 (2d Cir. Jun 20, 2007). Drawing all reasonable inferences in favor of Ms. Gupta, as the Court must at this stage, the Court finds that the August 2013 suspension and the September 2013 failure to promote fall within the reasonably expected scope of an EEOC investigation of Ms. Gupta's charges of discrimination (first exception). Thus, the Court need not address whether those incidents are "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge" (third exception).

### B. Hostile Work Environment (Count One)

Because Plaintiff has abandoned her hostile work environment claim,[7] Count One is DISMISSED.

### C. Discriminatory Failure to Promote (Count Two)

"To state a claim for failure to promote, [a] plaintiff must 'allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally-requested promotion.'" *Billups v. Dent Wizard Int'l Corp.*, No. 05 CIV. 9356 (DAB), 2010 WL 2541361, at *7 (S.D.N.Y. June 14, 2010) (*quoting Brown,* 163 F.3d at 710); *see also Romaine v. New York City Coll. of Tech. of the City Univ. of New York*, No. 10-CV-431 SLT SMG, 2012 WL 1980371, at *3 (E.D.N.Y. June 1, 2012) ("for

---

[7] "The plaintiff will not pursue her first cause of action, which claims a hostile work environment." (Pl.'s Opp. Br. [Dkt. # 26] at 17.)

14

purposes of pleading a plausible failure to promote claim, a plaintiff is still required to allege that he or she applied specifically for the position in question.").

Because Ms. Gupta does not allege that she applied for the positions, her claims for failure to promote in June 2012 and September 2013 must be dismissed. Ms. Gupta merely asserts that in June 2012, the Defendant promoted a non-Indian employee to "a position to which [Ms. Gupta] had requested to be promoted." (Compl. ¶ 16j.) There is no allegation that she actually applied for the position or when she made the "request[]." As for the September 2013 incident, Ms. Gupta does not even allege that she requested a promotion, but simply states that Defendant "yet again denied the promotional opportunity to the plaintiff." (Compl. ¶ 16n.) The general rule that a plaintiff must apply for a position is "subject to modification where the facts of a particular case make an allegation of a specific application a quixotic requirement." *Brown*, 163 F.3d at 710 (holding that plaintiff was not exempt from the general rule despite her assertions that positions were infrequently posted and "the aura of discrimination . . . so discouraged [plaintiff] that she ceased making application to specific positions after 1995."). Ms. Gupta does not provide any reason why she was unable to apply or chose not apply for the promotions she was allegedly denied. As in *Brown,* Ms. Gupta makes "no allegation in the complaint that [she] was not aware of positions, posted or not, as they came open." *Brown*, 163 F.3d at 710; *Romaine*, 2012 WL 1980371, at *3 ("for purposes of pleading a plausible failure to promote claim, a plaintiff is still required to allege that he or she applied specifically for the position in question. . . . An allegation that a general request for promotion was made is insufficient for purposes of stating a failure to promote claim.") Moreover, Ms. Gupta knows how to allege that she applied for a position. The Complaint suggests that she applied for an open position in January of 2012, relying on qualifications listed in an "advertisement for the

15

position." (Compl. ¶¶16a-c.) After learning that another employee would get the position, she "withdrew her application." (*Id*. ¶¶16e-f.) The allegations in the Complaint regarding the June 2012 and September 2013 promotional opportunities are sparse and do not "avow that she made some specific effort to apply for a particular position or positions. " *Brown,* 163 F.3d at 710. Therefore, the Court dismisses Ms. Gupta's failure-to-promote claim based on the June 2012 and September 2013 failure-to-promote allegations, but grants her leave to re-plead it and address the defects identified herein in an amended complaint, should she be able to do so in compliance with Rule 11.

### D.  Discriminatory Discipline (Count Three)

Defendant argues that Ms. Gupta has failed to state a claim for discriminatory discipline because she has not alleged that she "suffered an adverse employment action." "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment. An 'adverse employment action' is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (internal citations and quotation marks omitted).The Second Circuit has held that "a suspension with pay pending an investigation does not, *without more,* constitute an adverse employment action." *Id*. at 91 (emphasis added). The Second Circuit expressly stated, however, that it "need not hold that suspensions during investigations will never rise to the level of an adverse employment action." *Id.* at 92.

> The relevant question is therefore whether the employer has simply applied reasonable disciplinary procedures to an employee or if the employer has exceeded those procedures and thereby changed the terms and conditions of employment. Paid suspension during an investigation could thus potentially be adverse if the employer takes actions beyond an employee's normal exposure to disciplinary policies.

*Id.* at 93 n.1.

16

Ms. Gupta's August 2013 suspension was without pay, and therefore would be considered an "adverse employment action." Ms. Gupta also alleges two incidents—June 11, 2012 and February 6, 2013— in which the Defendant suspended her, with pay, pending investigations into alleged workplace misconduct. Two days after her June 11, 2012, suspension, "a hearing was conducted" and an employee "from the defendant's Office of Labor Relations made findings that substantially supported the plaintiff's allegations of discriminatory treatment at the hands of Alexandra McGoldrick." (Compl. ¶ 17v.) Without more, the June 11, 2012 suspension with pay is not a "materially adverse change" to the terms and conditions of Ms. Gupta's employment. Therefore, the Court DISMISSES Ms. Gupta's claim based on the June 11, 2012, suspension, but grants Ms. Gupta leave to re-plead it, in the event she can, consistent with Rule 11, address these defects in an amended complaint.

When Ms. Gupta was suspended on February 6, 2013, Ms. McGoldrick "called the plaintiff to her office and literally threw the letter of suspension at the plaintiff" and told her "that she needed to immediately vacate the building." (Compl. ¶ 17z.) When Ms. Gupta responded by stating that she wanted her union representative present, Ms. McGoldrick, "screamed at [her] to 'get out' and . . . escorted her out of the workplace." (Compl. ¶¶ 17aa-bb.) The Complaint suggests that such conduct does not comport with the Defendant's normal disciplinary policies, calling Ms. McGoldrick's action "degrading and demeaning conduct." (Compl. ¶ 17y.) Therefore, the Court cannot conclude, as a matter of law, that the February 6, 2013, paid suspension was not an adverse employment action.

Defendant also argues that even if the Defendant's disciplinary actions are considered "adverse employment actions," they do not raise an inference of discrimination. (Def.'s Mem. Supp. Mot. Dismiss [Dkt. # 16] at 20.) The Second Circuit, however, "has found such claims

17

sufficiently pleaded when the complaint stated simply that plaintiffs are [in a protected class], describe[d] defendants' actions in detail, and allege[d] that defendants selected [plaintiffs] for maltreatment solely because of their color." *Boykin,* 521 F.3d at 215 (internal citations and quotation marks omitted) (finding it sufficient that plaintiff's complaint states that she "is an African American female," describes defendant's actions and alleges that she "was treated differently from similarly situated [people] . . . because of her race . . . ."). Thus, Ms. Gupta's allegations of suspensions, taken as true, are sufficient to plead a claim of discriminatory discipline. Accordingly, Defendant's motion to dismiss is DENIED as to the February 6, 2013, and August 2013 suspensions.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss. Defendant's motion is GRANTED as to Counts One and Two, which are DISMISSED. Defendant's motion is GRANTED as to the June 11, 2012, suspension and DENIED as to the February 6, 2013, and August 2013 suspensions. The Court grants Plaintiff leave to file an amended complaint in which she re-pleads allegations concerning (1) the June 2012 and September 2013 failures to promote and (2) the June 11, 2012, suspension with pay, including as many facts as possible, consistent with Rule 11, to address the defects discussed in this ruling. No other amendments are permitted. Plaintiff shall have fourteen days from the date of this ruling to file any amended complaint.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
March 19, 2015