# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RENU GUPTA | |
| Plaintiff, | No. 3:14cv00112 (MPS) |
| v. | |
| CITY OF BRIDGEPORT, | |
| Defendant. | |

## MEMORANDUM AND ORDER

Plaintiff, Renu Gupta, brought this action against Defendant, the City of Bridgeport (the "Defendant" or the "City"), alleging that it discriminated against her because of her Indian national origin and Indian ethnicity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, *et seq*. ("Title VII"). (Compl. ECF No. 1.)

For the reasons that follow, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment. (ECF No. 42.) The Court also GRANTS Defendant's motion for an extension of time, *nunc pro tunc*, to file its reply brief. (ECF No. 53.)

## I.   BACKGROUND

### A.   Relevant Factual Background[1]

Gupta was born in India and is of Indian ethnicity. (Am. Compl., ECF No. 37 ¶ 9.) She is an American citizen, and has resided in the U.S. since she was about 24 years old. (Defendant's

---

[1] Unless otherwise noted, the following facts are undisputed, and recounted in the light most favorable to the nonmovant, drawing all reasonable inferences in favor of the nonmovant. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). The parties' Local Rule 56(a) Statements leave out many relevant facts. Thus, the Court supplements the factual background with citations to the parties' exhibits.

Local Rule 56(a)1 Statement, ECF No. 42-2 ("Def.'s L.R. 56(a)1 Stmt.") ¶¶ 2-3; Plaintiff's

Local Rule 56(a)2 Statement, ECF No. 52 ("Pl.'s L.R. 56(a)2 Stmt.") ¶¶ 2-3.) Gupta was hired

by the Defendant as a "grant writer" in November 2009 (Def.'s L.R. 56(a)1 Stmt. ¶¶ 5, 11; Pl.'s

L.R. 56(a)2 Stmt. ¶¶ 5, 11), and she remains employed by the Defendant as a grant writer.

(Def.'s L.R. 56(a)1 Stmt. ¶ 13; Pl.'s L.R. 56(a)2 Stmt. ¶ 13.) As a grant writer in the Department

of Central Grants and Community Development (the "Department"), Gupta engages in "grants

writing"; "processing . . . contracts, which are related to the grants"; and related financial tasks,

such as budget preparations. (Def.'s L.R. 56(a)1 Stmt. ¶ 14; Pl.'s L.R. 56(a)2 Stmt. ¶ 14.)

      Prior to being hired by the Defendant, Gupta had a "pretty extensive" interview with the

Defendant's Civil Service Commission that lasted about 45 minutes. (Def.'s L.R. 56(a)1 Stmt. ¶¶

4, 7, 9; Pl.'s L.R. 56(a)2 Stmt. ¶¶ 4, 7, 9.) Alexandra McGoldrick was present for the interview.

(Def.'s L.R. 56(a)1 Stmt. ¶ 8; Pl.'s L.R. 56(a)2 Stmt. ¶ 8), and Alanna Kabel was present during

the latter part of Gupta's second interview. (Def.'s L.R. 56(a)1 Stmt. ¶¶ 10, 16; Pl.'s L.R. 56(a)2

Stmt. ¶¶ 10, 16 (*citing* Gupta Tr. 19:1-5).) McGoldrick and Kabel—two of Gupta's

supervisors—are Caucasian women. (ECF No. 52-1, Gupta Affidavit ¶ 22.)

### 1.    Failure to Promote

#### a.    Policy Analyst Position - May 2012

      In October of 2011, there was a vacancy in the position of Policy Analyst, and Gupta

"verbally expressed" to McGoldrick that she wanted "to be appointed to the position of Policy

Analyst." (ECF No. 52-1, Gupta Affidavit ¶¶ 6-7; Am. Compl., ECF No. 37 ¶¶ 65-66.)

McGoldrick told Gupta "that no decision had been made about the posting and filling of the

position." (ECF No. 52-1, Gupta Affidavit ¶ 8; Am. Compl., ECF No. 37 ¶ 67.) Gupta

"continuously reviewed the website of the Department . . . as well as the physical bulletin board

of the civil service commission of the City of Bridgeport for information regarding the filling of the Policy Analyst position." (ECF No. 52-1, Gupta Affidavit ¶ 10; Am. Compl., ECF No. 37 ¶ 69.) Nevertheless, "[i]n May 2012, without any notice, and without accepting applications from qualified candidates for the position, the city of Bridgeport appointed Isolina De[J]esus . . . to the position of Policy Analyst, retroactive to March 28, 2012." (ECF No. 52-1, Gupta Affidavit ¶ 11; Am. Compl., ECF No. 37 ¶ 70.) DeJesus is a Hispanic woman. (ECF No. 52-1, Gupta Aff. ¶ 24.)

### b.      Director of Central Grants Position – September 2013

Gupta informed her supervisor, Kabel, of her desire to be considered for the position of Director of Central Grants[2] when McGoldrick was appointed to the position, and also in September of 2013, when McGoldrick resigned from that position.[3] (ECF No. 52-1, Gupta Affidavit ¶¶ 12-15; Am. Compl. ¶ 73.) The Defendant "did not post the position, nor did it accept applications from interested candidates for the vacant position." (ECF No. 52-1, Gupta Affidavit ¶ 16; Am. Compl. ¶ 75.)

---

[2] The parties also refer to the Director of Central Grants position as the Director of Grants Management position. (Pl.'s Opp. Br., ECF No. 51 at 8 n.3 ("The titles Director of Central Grants, and Director of Grants Management are one and the same").)

[3] In paragraph 15 of Gupta's affidavit, she states, "I informed my supervisor, Alanna Kabel, of my desire to be considered for the vacant position of Director of Grants Management, when Alexandra McGoldrick was appointed and when she had resigned." (ECF No. 52-1, Gupta Aff. ¶ 15.) Defendant interprets Gupta's affidavit as stating that Gupta informed Kabel of her interest in the position of Director of Central Grants when McGoldrick was appointed and when *Kabel* resigned. (Def.'s Reply Br., ECF No. 54 at 9.) This is not a reasonable interpretation of the affidavit. The affidavit earlier refers to the resignation of McGoldrick, not Kabel (ECF No. 52-1, Gupta Aff. ¶ 12), and the last antecedent before the pronoun "she" in the sentence quoted above is also McGoldrick, not Kabel. In any event, to the extent there is an ambiguity, I must construe it in Gupta's favor. *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194 (2d Cir. 2007) (on summary judgment, court "view[s] all facts and constru[es] all ambiguities in the light most favorable to the non-moving party").

During the same week that McGoldrick resigned the Defendant appointed Christina B. Smith, an African American woman, to the position. (ECF No. 52-1, Gupta Aff. ¶¶ 12-13; 23.) Smith had applied for the position of Deputy Director of the Office of Policy & Economic Development and, following her interview, was offered the position of Director of Central Grants that had been made available by the resignation of Alexandra McGoldrick. (ECF No. 52-1, Gupta Aff. ¶ 14.) Smith, unlike Gupta, had no prior experience in grants management. (ECF No. 52-1, Gupta Aff. ¶¶ 12-13; Am. Compl. ¶¶ 71-72.)

Gupta's affidavit states that, for both positions, the City engaged in a practice that "was inconsistent with the practice of the City of Bridgeport," which involved "first publicly issu[ing] a notice of its intent to fill the position, accept[ing] applications from qualified candidates, conduct[ing] an interview process, and then select[ing] the successful candidate to fill the position." (ECF No. 52-1, Gupta Affidavit ¶¶ 17-18.)

### 2.    Discipline

#### a.    June 2012 Suspension with Pay

On June 11, 2012, McGoldrick gave Gupta a letter stating that Gupta was "suspended with pay pending an investigation and action by the Labor Relations Department" with respect to an incident involving DeJesus. (Pl.'s Ex. 17, ECF No. 52-18.) McGoldrick's letter stated that the suspension was "as result of the incident last Friday afternoon where you assaulted Isolina DeJesus regarding work that was assigned to you." (*Id.*) The letter further stated that the suspension was "prompted not only by last Friday's incident but by your long history of hostile interactions with your co-workers, your verbal abuse of co-workers, your insubordinate attitude and generally argumentative and disruptive behavior. All of the above represent violations of the City's work rules and unprofessional behavior in the work place." (*Id.*) Phillip White of the

4

Office of Labor Relations investigated the incident, as well as McGoldrick's claim that Gupta has been insubordinate in processing a contract called the Healthy Homes Initiative contract. White completed a report of his investigations on August 13, 2012. (Pl.'s Ex. 18, ECF No. 52-19, Office of Labor Relations Investigative Report: Renu Gupta.) White's report found no support for McGoldrick's claim that Gupta had been insubordinate with respect to the Healthy Homes Initiative contract, and therefore did not suggest that discipline should be imposed against Gupta for her conduct with respect to that contract. (*Id*. at p. 5.)

White investigated the "confrontational incident of June 8, 2012," with DeJesus by interviewing Gupta, DeJesus, McGoldrick, and Patrick Carleton (another grant writer). White found that Gupta had asked DeJesus to help her with a FedEx label, and DeJesus had "mentioned the request to . . . McGoldrick." (*Id*. at p. 6.) DeJesus told White that Gupta had confronted her in the hallway and "said something to the effect of 'You call yourself a Christian. You're a snake.'" (*Id*.) Gupta, on the other hand, claimed that she had said "you appear so nice and friendly on the surface. Why did you go behind my back and say things to Alex?" (*Id*.) White's report does not mention an assault. White concluded that Gupta had made "comments that were disruptive to the workplace" (*id*.), and that her conduct violated City work rule 9, "[b]ehavior that disrupts the work environment to include indecent, inappropriate, or immoral conduct." (*Id.* at p. 7.) White suggested that Gupta receive a written warning. (*Id*.) Gupta returned to work on October 31, 2012. (Deposition of Phillip White, ECF No. 52-27 ("White Tr.") at p. 21.) It is not clear from the record whether Defendant ever gave Gupta this written warning.

### b.       February 2013 Suspension with Pay

In February 2013, Gupta was suspended with pay pending the Defendant's investigation of the events surrounding the rejection by the U.S. Department of Housing and Urban

Development ("HUD") of the 2013 HUD Lead Hazard Control Grant (the "Grant"),which was a lead remediation grant on which Gupta was working. (Def.'s L.R. 56(a)1 Stmt. ¶¶ 26-28; Pl.'s L.R. 56(a)2 Stmt. ¶¶ 26-28; Pl.'s Ex. 7, ECF No. 52-8, February 6, 2013 Suspension Letter.)

Gupta contends that the rejection of the Grant application was McGoldrick's fault because McGoldrick failed to renew the City's account with an online grants submission system called System for Award Management ("SAM"), despite Gupta's reminders. (Def.'s L.R. 56(a)1 Stmt. ¶ 29; Pl.'s L.R. 56(a)2 Stmt. ¶ 29.) Gupta forwarded McGoldrick an e-mail dated December 3, 2012, from samadmin@sam.gov warning that the City's registration was about to expire. (Pl.'s Ex. 10 (E-mail dated December 3, 2012 from Gupta to McGoldrick), ECF No. 52-11.) On January 9, 2013, Gupta forwarded to McGoldrick another e-mail dated January 2, 2013, which contained the same warning. (Pl.'s Ex. 4 (E-mail dated January 9, 2013 from Gupta to McGoldrick), ECF No. 52-5.) Gupta also alleges that later on January 9, she saw McGoldrick in the hallway and mentioned the e-mail of January 2, 2013. McGoldrick told Gupta that she had seen the e-mail and would take care of it. (Pl.'s Ex. 11, ECF No. 52-12 at 1.) McGoldrick never updated the City's registration in the SAM system, however. As a result, the Grant application was rejected when Gupta tried to file it on February 4, 2013, the day it was due. (Pl.'s Ex. 21, ECF No. 52-22 at p. 6; *see also* Pl.'s Ex. 11, ECF 52-12.) On February 6, Gupta told Tyler Fairbarn, Acting Deputy Director of the Bridgeport Department of Housing and Community Development, that the "problem with the submission of the grant" was McGoldrick's fault for failing to update the City's registration. (Def.'s L.R. 56(a)1 Stmt. ¶ 37; Pl.'s L.R. 56(a)2 Stmt. ¶ 37; *see also* Pl.'s Ex. 3, ECF No. 52-4.)

Following the rejection of the Grant, the department scrambled to contact HUD to resolve the submission problem or obtain permission to submit the Grant in an alternative manner.

Eventually, a HUD employee agreed to accept an e-mail with the Grant application, but advised that it was unclear whether HUD itself would accept an application submitted in this manner. (ECF No. 52-22 at p. 7.) Thus, even after the City sent the Grant application to HUD by e-mail and FedEx, it still had to submit the Grant application through the SAM system. (Def.'s L.R. 56(a)1 Stmt. ¶ 36; Pl.'s L.R. 56(a)2 Stmt. ¶ 36.) While Gupta was suspended pending an investigation of the events involving the Grant in February of 2013, McGoldrick submitted the Grant application through the SAM system. (Pl.'s L.R. 56(a)2 Stmt. ¶ 30.) On March 8, 2013, HUD notified the City that the Grant application was defective because it was missing a form called HUD 2991. (Def.'s L.R. 56(a)1 Stmt. ¶ 30; Pl.'s L.R. 56(a)2 Stmt. ¶ 30.) Gupta testified that she had prepared and submitted the form, and someone from the Department must have removed the form before submitting the Grant application through the SAM system. (ECF Gupta Tr. at 169-70; Def.'s L.R. 56(a)1 Stmt. ¶¶ 31-32; Pl.'s L.R. 56(a)2 Stmt. ¶¶ 31-32.) Gupta asserts that she "did not have any role in the submission of the [G]rant without Form 2991." (Pl.'s L.R. 56(a)2 Stmt. Disputed Issues ¶ 22.)

### c.    Complaints Against Gupta

On February 15, 2013, McGoldrick submitted a formal complaint to White regarding Gupta's behavior. With her complaint, she attached complaints from other employees in the Department, including DeJesus, Marisol Gonzalez (McGoldrick's assistant), and Carleton. These employees generally complained that Gupta constantly asked where other staff members were and what they were doing; asked them personal questions; and said negative things about other staff members (*e.g.* "Be careful because Alex [McGoldrick] tries to blame others in the office for everything" and "Patrick [Carleton] does nothing all day"). (ECF No. 52-23 at 6-18; ECF No. 52-24 at 22-23.)

### d.      Investigations and Gupta's August 2013 Suspension

White investigated Gupta's role in the failed submission of the Grant application and employees' complaints that Gupta's behavior was creating a "hostile work environment." White's investigative report found that Gupta was culpable for failing to follow up with McGoldrick about the SAM system e-mails, which Gupta "knew to be of critical importance" and which prevented Gupta from successfully submitting the only grant for which she was responsible at the time. (Pl.'s Ex. 21, Office of Labor Relations Investigative Report, Renu Gupta: Workplace Conduct & 2013 HUD Lead Grant, April 20, 2013, ECF No. 52-22 at p. 11.) White's report also found that there was "ample evidence" that Gupta "engaged in insolent and uncooperative behavior in the discharge of her employment duties." (*Id*. at 12.) The report found that there was "no dispute that Ms. McGoldrick instructed Ms. Gupta to send the printed grant application to HUD via FedEx, as a back-up plan" and that "Gupta refused McGoldrick's reasonable instruction," causing another employee "to perform the work that had been assigned to" Gupta. (*Id*. at p. 13.) White's report found that, in processing the Grant, Gupta violated City work rules 10, 12, and 15. (*Id*.) Work rule 10 is "[i]nsubordination – [r]efusal to obey a lawful assignment or instruction"; work rule 12 is "[i]nability to properly perform job functions as outlined on job description"; and work rule 15 is "[n]eglect or mishandling of equipment or supplies."[4] (City of Bridgeport Work Rules and Regulations, ECF No. 52-19 at 22-23.)

White's report found that the evidence was not sufficient to sustain a claim that Gupta caused a "hostile work environment." (Pl.'s Ex. 21, Office of Labor Relations Investigative Report, Renu Gupta: Workplace Conduct & 2013 HUD Lead Grant, April 20, 2013, ECF No.

---

[4] This finding was based on Gupta's failure "to properly maintain or update information critical to successfully submitting grants" on the SAM system. (ECF No. 52-22 at p. 13-14.)

52-22 at p. 5.) The report found, however, that Gupta's behavior in gossiping and placing blame on others violated City work rules 9, 10, 11, and 20. (*Id*. at p. 14.) Work rule 11 is "[w]asting time, energy or supplies during the course of a shift," and work rule 20 is "[m]alicious gossip that is disruptive to the efficient operation of the City or harmful to a fellow employee." (City of Bridgeport Work Rules and Regulations, ECF No. 52-19 at 22-23.) The report recommended that Gupta be suspended without pay for fifteen days, and "noted that Ms. Gupta's disciplinary history includes multiple warnings - verbal and written, and she was suspended for 10 days without pay on or about January 12, 2012 for violating City work rules 2, 7, 9, 10, 11, and 16." (Pl.'s Ex. 21, Office of Labor Relations Investigative Report, Renu Gupta: Workplace Conduct & 2013 HUD Lead Grant, April 20, 2013, ECF No. 52-22 at p. 14.)

The investigation of Gupta led to an investigation of McGoldrick concerning her role in the processing of the Grant application and the implementation of Gupta's performance improvement plan. White's investigative report for McGoldrick concluded that "McGoldrick's conduct exhibited multiple instances of inadequate work performance" and "violated City work rule 12." (Pl.'s Ex. 22, ECF No. 52-24, Investigative Report of Alexandra McGoldrick, April 25, 2013 at p. 5-6.) White recommended that McGoldrick be suspended for five workdays without pay. (*Id*. at 7.) McGoldrick never served that suspension. (Pl.'s L.R. 56(a)2 Stmt. Disputed Issues ¶ 25.) She resigned in September 2013. (Gupta Aff., ECF No. 52-1 at ¶ 12.)

In August of 2013, following the investigation and a disciplinary hearing concerning Gupta's actions with respect to the Grant, the Defendant suspended her for fifteen days without pay. (Pl.'s Ex. 20, ECF No. 52-21.) The Defendant informed Gupta of the suspension in a letter from Kabel, dated August 22, 2013. The letter stated that Gupta was found to have violated City work rules 9, 10, 11, 12, 15 and 20. (Pl.'s Ex. 20, ECF No. 52-21.)

Gupta asserts that the "reasons advanced" by the City for suspending her were false. (Pl.'s L.R. 56(a)2 Stmt. Disputed Issues ¶ 18.) Gupta contends that she "complied with all directives from McGoldrick regarding the submission of the Grant application after it had been rejected; she submitted [the Grant application] by email to HUD, and then followed up with McGoldrick to see if McGoldrick wanted her to send the physical grant by FedEx to HUD." (Pl.'s L.R. 56(a)2 Stmt. Disputed Issues ¶ 21.)

**B.        Procedural Background**

On March 19, 2015, I granted in part and denied in part the Defendant's motion to dismiss Gupta's original complaint for failure to state a claim. *See Gupta v. City of Bridgeport*, No. 3:14CV00112 MPS, 2015 WL 1275835, at *1 (D. Conn. Mar. 19, 2015). Among other things, I found that Gupta sufficiently stated a claim as to the February 6, 2013 and August 2013 suspensions; dismissed Gupta's June 2012 and September 2013 failure-to-promote claims because the complaint did not adequately allege that Gupta had applied for the positions; and dismissed Gupta's claim that the June 11, 2012 suspension with pay was discriminatory because it was not a "materially adverse change" to the terms and conditions of Gupta's employment. *Id.* at *8-10. I granted Gupta "leave to file an amended complaint in which she re-pleads allegations concerning (1) the June 2012 and September 2013 failures to promote and (2) the June 11, 2012, suspension with pay, including as many facts as possible, consistent with Rule 11, to address the defects discussed in this ruling." *Id.* at *10. Gupta filed an amended complaint on April 1, 2015, in which she alleged that the Defendant discriminated against her in violation of Title VII because of her Indian national origin and Indian ethnicity, by failing to promote her in May

2012[5] and September 2013 and by suspending her from work in February 2013 and August 2013. (Am. Compl., ECF No. 37.) The amended complaint did not include a claim for discriminatory discipline based on the June 11, 2012 suspension.

## II.   LEGAL STANDARD

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (internal citations and quotation marks omitted). "[T]he court must assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotations and citations omitted).

## III.   DISCUSSION

---

[5] The date of the June 2012 failure-to-promote claim changed to May 2012 in the amended complaint.

Gupta's claims are subject to the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). At the first stage, the plaintiff "bears the burden of establishing a prima facie case of discrimination . . . ." *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 92 (2d Cir. 2013) (internal quotation marks and citation omitted). "If the plaintiff succeeds, a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action." *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002). If the defendant does so, then the presumption of discrimination drops out, and in order to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (internal quotation marks and citations omitted).

### A.  Failure to Promote (Count One)

> To establish a *prima facie* case of a discriminatory failure to promote, a Title VII plaintiff must ordinarily demonstrate that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.

*Aulicino,* 580 F.3d at 80 (citations omitted). "[F]or the plaintiff to avoid an adverse judgment, there must be proof that the plaintiff was rejected under circumstances which give rise to an inference of unlawful discrimination." *Id.* (quotation marks and citation omitted). The burden of establishing a *prima facie* case is "not onerous." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338 (2015), and "the evidence necessary to satisfy th[e] initial burden of establishing that an adverse employment action occurred under circumstances giving rise to an inference of

discrimination is minimal." *Littlejohn v. City of New York*, 795 F.3d 297, 313 (2d Cir. 2015) (quotation marks and citation omitted).

There is no dispute that Gupta, who was born in India and is of Indian ethnicity, is a member of a protected class. Nor is there a dispute that Gupta was qualified for the positions of Policy Analyst and Director of Central Grants. The Defendant argues that Gupta failed to show: (1) that she applied for the positions at issue, and (2) that she was rejected under circumstances giving rise to discrimination. "[T]he second element of a prima facie case cannot be established merely with evidence that a plaintiff generally requested promotion consideration"; "[a] specific application is required. . . ." *Petrosino v. Bell Atl.,* 385 F.3d 210, 227 (2d Cir.2004). "[T]o be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Id.* at 227.

### 1.   Policy Analyst Position - May 2012

#### a.   Application Requirement

In October of 2011, there was a vacancy in the position of Policy Analyst, and Gupta "verbally expressed" to her supervisor, McGoldrick, that she wanted "to be appointed to the position of Policy Analyst." (ECF No. 52-1, Gupta Affidavit ¶¶ 6-7; Am. Compl., ECF No. 37 ¶¶ 65-66.) McGoldrick told Gupta "that no decision had been made about the posting and filling of the position." (ECF No. 52-1, Gupta Affidavit ¶ 8; Am. Compl., ECF No. 37 ¶ 67.) Construed in the light most favorable to the plaintiff, this can be read as a statement that, in fact, there was no vacancy, or more precisely, the Defendant had not yet decided whether there was a job opening.

In *Mauro v. S. New England Telecommunications, Inc.*, a case decided four years before *Petrosino,* the Second Circuit held that the plaintiff's failure to apply for promotion to a Level Two job "would not have precluded him, as a matter of law, from establishing a prima facie case of age discrimination." 208 F.3d 384, 387 (2d Cir. 2000). The court found that an employee is not required to apply for a position where he or she:

> indicated to the employer an interest in being promoted to a particular class of positions [Level Two jobs], but was unaware of specific available positions because the employer never posted them. In such a situation, requiring the plaintiff to show that he or she applied for the specific jobs at issue would be unrealistic, as an employee by definition cannot apply for a job that he or she does not know exists.

*Id.* In *Mauro,* the employer "acknowledge[d] that it never posted one of the two positions" and the record revealed a genuine dispute of fact as to whether the employer posted the second job when it became available. *Id*. When two Level Two jobs opened, the employer "hand-picked individuals to fill those positions without informing Mauro that the jobs were available." *Id*.

Here, in addition to the fact that the job was not posted, Defendant told Gupta, in essence, that the job was not available and that Defendant had not yet decided whether it would be. Moreover, Gupta "continuously reviewed the website of the Department . . . as well as the physical bulletin board of the civil service commission of the City of Bridgeport for information regarding the filling of the Policy Analyst position." (ECF No. 52-1, Gupta Affidavit ¶ 10; Am. Compl., ECF No. 37 ¶ 69.) And then, "[i]n May 2012, without any notice, and without accepting applications from qualified candidates for the position," the City appointed DeJesus to the position. (ECF No. 52-1, Gupta Affidavit ¶ 11; Am. Compl., ECF No. 37 ¶ 70.) Construing this evidence in the light most favorable to Gupta, I find that it satisfies the requirement of *Petrosino* that the employee have no knowledge of an opening before it is filled. An employee who learns of a vacancy but then is told by the employer that the position will not be filled (or that no

14

decision has been made about whether it will be filled) cannot fairly be charged with knowledge of the vacancy. McGoldrick's statement, combined with Gupta's fruitless review of the online and physical job postings, is evidence that Gupta had no knowledge of an actual vacancy. On this record, a reasonable juror could find that Gupta is excused from the specific application requirement for the Policy Analyst position because the vacancy at issue was not posted and Gupta had no knowledge of an actual vacancy before it was filled.[6]

### b.  Inference of Discrimination

> Plaintiff's burden in showing an inference of discrimination is *de minimis.* A rational trier of fact need only to be able to infer that the decision was based *in part* on discrimination . . . Therefore, the admissible evidence need only be sufficient enough to permit a jury to infer a discriminatory motive. This includes circumstantial evidence. Evidence that a person outside of Plaintiff's protected class was offered the desired position is sufficient for a jury to infer a discriminatory motive.

*Johnson v. Connecticut,* 798 F.Supp.2d 379, 386–87 (D.Conn. 2011) (internal quotation marks and citations omitted) (emphasis in original). The Defendant's selection of DeJesus—a non-Indian employee—is sufficient to suggest a discriminatory motive. And contrary to the assertions in the Defendant's brief, the fact that DeJesus is Hispanic does not alter the suggestion of discrimination. *Id.* ("the fact that Defendant hired candidates from other underrepresented groups does not eliminate the possibility that there was bias against Plaintiff's protected class"). Thus, Gupta has established a *prima facie* case of discrimination on the basis of ethnicity and/or national origin with respect to the Defendant's failure to promote her to the Policy Analyst position in May 2012.

---

[6] Were I to treat Gupta's statement in her affidavit that "there was a vacancy" for which she expressed interest in 2011 as disqualifying "knowledge of a vacancy," it would create a loophole in the Title VII framework, allowing an employer to escape failure-to-promote liability by telling protected employees that a "vacancy" would not be filled (or that the employer had not yet decided whether to fill it) and then "hand picking" a favored employee for the position.

### c.      Legitimate Non-Discriminatory Reason

Because Gupta has established a *prima facie* case, the Defendant must offer a legitimate, non-discriminatory reason for its decision not to promote her to the Policy Analyst position. "The employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir.1998) (citation omitted). The Defendant has not met this burden. Defendant's only non-discriminatory reason for not promoting Gupta is that she never applied for the position.[7] As discussed above, I find that Gupta is excused from the application requirement for the Policy Analyst position. Because the Defendant provides no legitimate, nondiscriminatory reason for promoting a non-Indian employee over Gupta to the Policy Analyst position, I find that Gupta has raised a triable issue of fact as to whether the Defendant failed to promote her based on her national origin or ethnicity, and I deny summary judgment on this claim. *See Bunch v. City Univ. of New York Queens Coll.*, No. 98 CIV. 1172 (AKH), 2000 WL 1457078, at *3 (S.D.N.Y. Sept. 28, 2000) (denying summary judgment to defendant on failure-to-promote claim where "[m]aterial issues of fact exist as to the precise nature of the application process" and "the significance to be accorded to the statements of an applicant's supervisor" that the plaintiff should not apply.).

### 2.  Director of Central Grants Position – September 2013

Unlike the Policy Analyst position, Gupta has not satisfied the elements required to excuse her from the specific application requirement for the position of Director of Central

---

[7] The Defendant notes that Gupta's position as a grant writer has a union affiliation and the Policy Analyst position does not. (ECF No. 42 at 11.) The Defendant provides no explanation for the significance of this difference, however.

Grants. Gupta had knowledge of the vacancy in the Director of Central Grants position before it was filled, and she informed Kabel of her desire to be considered for the position in September of 2013, when McGoldrick resigned from the position. (ECF No. 52-1, Gupta Affidavit ¶¶ 12-15; Am. Compl. ¶ 73.) There is no evidence that the Defendant told Gupta that it would not fill the position or had not yet decided whether to do so. Further, although Gupta attempted to apply for the position by expressing interest in the position to Kabel, Gupta does not demonstrate that such an expression of interest is an "informal procedure endorsed by" the Defendant. *See Butts v. New York City Dep't Of Hous. Pres. And Dev.*, No. 00 CV 6307 KMK, 2007 WL 259937, at *12 (S.D.N.Y. Jan. 29, 2007) *aff'd*, 307 F. App'x 596 (2d Cir. 2009). Besides Gupta's affidavit, there is little evidence about the Defendant's hiring policies and practices in the record. And the evidence in Gupta's affidavit undermines any notion that an oral request for a promotion was an informal application procedure endorsed by her employer. Gupta's affidavit states that—for both the Policy Analyst and the Director of Central Grants positions—the City engaged in a practice that "was inconsistent with the practice of the City of Bridgeport." (ECF No. 52-1, Gupta Affidavit ¶ 17.) Gupta asserts that the City's usual practice involved "first publicly issu[ing] a notice of its intent to fill the position, accept[ing] applications from qualified candidates, conduct[ing] an interview process, and then select[ing] the successful candidate to fill the position." (*Id*. ¶ 18.) There is no evidence that an employee's oral expression of interest in a position to a supervisor was an informal application procedure that was endorsed—or otherwise recognized—by the Defendant. Because Gupta fails to satisfy the application exception, she fails to establish a *prima facie* case of discrimination, and I grant the Defendant summary judgment on Gupta's failure-to-promote claim with respect to the Director of Central Grants position.

### B.  Discriminatory Discipline (Count Two)

To make out a *prima facie* case of discriminatory discipline, the plaintiff "must show: (1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (internal quotation marks and citations omitted). As stated above, it is undisputed that Gupta is a member of a protected class and was qualified for her position as a grant writer in the Department. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) ("the qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he possesses the basic skills necessary for performance of [the] job.") (internal quotation marks and citations omitted). The defendant disputes (1) that the suspension with pay was an adverse employment action, and (2) that the suspensions occurred under circumstances giving rise to an inference of discrimination.

### 1.    June 2012 Suspension with Pay

In ruling on the Defendant's motion to dismiss, I dismissed Gupta's claim for disparate treatment based on the June 2012 suspension, finding that "[w]ithout more, the June 11, 2012 suspension with pay is not a 'materially adverse change' to the terms and conditions of" Gupta's employment. *Gupta v. City of Bridgeport*, No. 3:14CV00112 MPS, 2015 WL 1275835, at *9 (D. Conn. Mar. 19, 2015). Although I allowed Gupta to amend her complaint and replead this claim, Gupta did not include a claim for discriminatory discipline based on the June 11, 2012 suspension in her amended complaint. (ECF No. 37.) The "Second Cause of Action," the count claiming "discriminatory discipline," mentions only the February and August 2013 suspensions, not the June 2012 paid suspension. (*Id.* at 17.) In fact, a comparison of the original complaint

18

with the amended complaint makes clear that the discriminatory discipline count was amended to specify *only* the suspensions of February 2013 and August 2013, as opposed to the more general formulation in the original complaint of "a continuous course of disciplinary conduct." (Compl., ECF No. 1 ¶ 150; ECF No. 37 ¶¶ 117-122.) The amended complaint thus does not give the Defendant fair notice that the plaintiff's discriminatory discipline claim includes the June 2012 suspension. In Gupta's brief opposing summary judgment, however, she argues that the June 2012 paid suspension was discriminatory because it was based on false charges and the Defendant "continued her suspension, without legitimate reason, well beyond the conclusion of its investigation." (ECF No. 51 at 15-16.) Specifically, Gupta alleges that, "[a]lthough the defendant's investigation cleared the plaintiff of wrongdoing on August 13, 2012, she was not allowed to return to work until October 31, 2012." (ECF No. 51 at 15-16.) "In general, plaintiffs are not permitted to raise new theories of their case in opposition to a motion for summary judgment." *Munoz v. City of New York*, No. 04 CIV. 1105 (JGK), 2008 WL 464236, at *7 (S.D.N.Y. Feb. 20, 2008) (citation omitted). Because the amended complaint specifically omitted a claim for discriminatory discipline based on the June 2012 paid suspension, Gupta is precluded from raising such a claim in opposition to the motion for summary judgment. *See Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 308 (S.D.N.Y. 2010) ("a party cannot amend its pleading through its opposition brief").

### 2.     February 6, 2013 Suspension with Pay

Gupta's amended complaint alleges that the Defendant discriminated against her by suspending her, with pay, on February 6, 2013, pending an investigation regarding her actions and the events surrounding the submission of the Grant. (Am. Compl. ¶ 117; Pl.'s Ex. 7, ECF

No. 52-8.) Defendant moves for summary judgment on the basis that the February 2013

suspension with pay was not an adverse employment action. (Def.'s Br., ECF No. 42-1 at 12-14.)

"[A]dministrative leave with pay during the pendency of an investigation does not,

without more, constitute an adverse employment action. . . . [A]n employee does not suffer a

materially adverse change in the terms and conditions of employment where the employer

merely enforces its preexisting disciplinary policies in a reasonable manner." *Brown*, 673 F.3d at

150 (internal quotation marks and citation omitted). The Second Circuit has noted, however,

"that a suspension with pay may, in some circumstances, rise to the level of an adverse

employment action." *Id.*

> The relevant question is therefore whether the employer has simply applied
> reasonable disciplinary procedures to an employee or if the employer has
> exceeded those procedures and thereby changed the terms and conditions of
> employment. Paid suspension during an investigation could thus potentially be
> adverse if the employer takes actions beyond an employee's normal exposure to
> disciplinary policies.

*Id.* (internal quotation marks and citation omitted). There is no evidence that Gupta's paid

suspension represented "actions beyond an employee's normal exposure to disciplinary

policies." Nor is there evidence that suggests that the procedures during the investigation were

unreasonable or dilatory. *See Joseph v. Leavitt*, 465 F.3d 87, 92 (2d Cir. 2006) ("An

exceptionally dilatory investigation might constitute a material change in the terms and

conditions of employment."). Moreover, Gupta's opposition brief does not separately discuss the

February 6, 2013 suspension. She states that the February 6, 2013 suspension "had been

subsumed by the [August 2013] fifteen-day suspension of the plaintiff's employment without

pay," and "a suspension without pay constitutes an adverse employment action . . . ." (ECF No.

51 at 21.) Thus, Gupta has abandoned her claim that the February 6, 2013 suspension with pay

was a separate incident of discriminatory discipline. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198

(2d Cir. 2014) ("in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.")

### 3. August 2013 Suspension without Pay

Neither party disputes that Gupta's fifteen-day suspension without pay is an adverse employment action. *See Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 307 (N.D.N.Y. 2013) (citing multiple cases deeming unpaid suspensions adverse employment actions). The Defendant argues that Gupta cannot make out the fourth element of the *prima facie* case because there is "no evidence that the Defendant was motived by or intended to discriminate against the Plaintiff on the basis of her national origin or ethnicity." (Def.'s Br., ECF No. 42-1 at 17.) Gupta argues that she "was unfairly singled out" for a fifteen-day suspension, while McGoldrick, who was also found to be at fault for the failure to file the Grant application on time, received a five-day suspension that she never served. The fact that McGoldrick and Gupta did not receive the same discipline does not establish an inference of discrimination unless they are similarly situated. "[A]dverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination." *Littlejohn,* 795 F.3d at 312.

> An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct. [T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical. In other words, the comparator must be similarly situated to the plaintiff in all material respects.

*Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010) (internal quotation marks and citations omitted).

Aside from showing that McGoldrick received more favorable disciplinary treatment, Gupta does not provide facts that McGoldrick "performed similar job functions, was subjected to

the same disciplinary standards, [or] engaged in similar conduct . . . ." as Gupta. *Abdul-Hakeem v. Parkinson*, No. 3:10CV747 JBA, 2012 WL 234003, at \*5 (D. Conn. Jan. 25, 2012) *aff'd,* 523 F. App'x 19, 21 (2d Cir. 2013). The Defendant investigated both McGoldrick and Gupta because of the problems with the filing of the Grant application, and the Defendant found that both of them had a role in the rejection of the Grant. Nevertheless, Gupta and McGoldrick had different job titles, McGoldrick was Gupta's supervisor, Gupta had previous disciplinary infractions, and Gupta "offers no additional evidence that they were similarly situated in terms of performance, evaluation or discipline standards, or that they engaged in comparable conduct." *Joseph v. Owens & Minor Distribution, Inc.*, 5 F. Supp. 3d 295, 312 (E.D.N.Y. 2014). The Defendant found that Gupta engaged in disruptive behavior, acted insubordinately by refusing to obey McGoldrick's instructions, wasted time, gossiped maliciously about co-workers, improperly performed her job functions (in part, by failing to follow up with McGoldrick about the SAM system), and neglected or mishandled equipment and supplies with respect to the Grant application. (Pl.'s Ex. 21, ECF No. 52-22 at pp. 5, 12-14.) The Defendant found that Gupta violated City work rules 9, 10, 11, 12, 15 and 20. (Pl.'s Ex. 20, ECF No. 52-21.)

The Defendant's investigation of McGoldrick found that McGoldrick violated work rule 12, "fail[ing] to properly perform the job functions of her position," by (1) failing to act on the e-mail from her subordinate (Gupta), marked "Action Required," and (2) failing to perform weekly evaluations of Gupta in accordance with Gupta's Performance Improvement Plan. (Pl.'s Ex. 22, Office of Labor Relations Investigative Report, Alexandra McGoldrick: [2013] HUD Lead Grant & Implementation of Subordinate's Performance Improvement Plan, April 25, 2013, ECF 52-24 at p. 4-6.) The investigation did not find that McGoldrick refused orders from a supervisor or engaged in malicious gossip. (*Id.*) While the Defendant found that Gupta had violated six City

work rules, including rule 12, the Defendant found that McGoldrick violated only rule 12. Moreover, Gupta had previously received discipline—including warnings and a suspension—and there is no evidence that the City had ever disciplined McGoldrick. Thus, McGoldrick and Gupta were not similarly situated with regard to the seriousness of their conduct. *See, e.g., Tomasino v. Mount Sinai Med. Ctr. & Hosp.*, No. 97 CIV. 5252 (TPG), 2003 WL 1193726, at *14 (S.D.N.Y. Mar. 13, 2003) ("[t]he factual record reveals that the four nurses whom Tomasino claims are comparators are not similarly-situated to Tomasino in all material respects. None of the comparators . . . committed the most serious of the infractions for which Tomasino was discharged . . . .").

Even if I assume that Gupta meets her minimal burden of establishing a *prima facie* case of discriminatory discipline, Gupta still fails to raise a genuine issue of material fact that the legitimate, non-discriminatory reasons offered by the Defendant for the suspension were not its true reasons, but were a pretext for discrimination. The Defendant's investigation found that Gupta was culpable for failing to follow up with McGoldrick about the SAM system e-mails, which "[Gupta] knew to be of critical importance" and which prevented her from successfully submitting the Grant application, the only grant for which she was responsible at that time. (Pl.'s Ex. 21, Office of Labor Relations Investigative Report, Renu Gupta: Workplace Conduct & 2013 HUD Lead Grant, April 20, 2013, ECF No. 52-22 at p. 11.) The Defendant also found that there was "ample evidence" that Gupta "engaged in insolent and uncooperative behavior in the discharge of her employment duties." (*Id*. at 12.) Specifically, White's investigative report found that Gupta "overtly refused on two (2) separate occasions to comply with the reasonable directions of [McGoldrick] though she ultimately did comply with one request following the initial refusal." (*Id*. at p. 14.) The report found that there was "no dispute that Ms. McGoldrick

23

instructed Ms. Gupta to send the printed grant application to HUD via FedEx, as a back-up plan"
and that "Gupta refused McGoldrick's reasonable instruction," causing another employee "to
perform the work that had been assigned to" Gupta. (ECF No. 52-22 at p. 13.) The report also
found that Gupta was responsible for the failure to include HUD Form 2991 with the application.
(ECF No. 52-22 at p. 11.) Finally, the basis of the findings that Gupta violated work rules 9, 10,
11, and 20 was the conclusion that Gupta "engaged in conduct intended to deflect attention from
her own conduct" and "intended to undermine the authority of Ms. McGoldrick, her supervising
manager, by casting the blame [on] her and attempting to convince others to distrust Ms.
McGoldrick." (ECF No. 52-22 at p. 5.) Gupta argues that because she did not refuse lawful
orders and she submitted Form 2991 when she submitted the Grant application by e-mail, the
Defendants' reasons are false.

Once the Defendant has provided a legitimate, non-discriminatory reason, the
presumption of discrimination drops out. In order to defeat summary judgment, "the plaintiff's
admissible evidence must show circumstances that would be sufficient to permit a rational finder
of fact to infer that the defendant's employment decision was more likely than not based in
whole or in part on discrimination." *Aulicino*, 580 F.3d at 80 (internal quotation marks and
citations omitted). "When a plaintiff presents no evidence of discriminatory motive, but presents
some evidence that the employer's explanation is false, a court should 'examine the entire record
and . . . make the case-specific assessment as to whether a finding of discrimination may
reasonably be made.'" *McLeod v. Connecticut*, No. 3:03CV1397 (RNC), 2004 WL 2381714, at
*2 (D. Conn. Sept. 30, 2004) (*quoting Zimmermann v. Assocs. First Capital Corp.,* 251 F.3d
376, 381 (2d Cir.2001)). "Whether summary judgment is appropriate in such a case depends on,
among other things, 'the strength of the plaintiff's prima facie case, the probative value of the

proof that the employer's explanation is false, and any other evidence that supports the employer's case.'" *McLeod*, 2004 WL 2381714, at *2 (*citing Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149 (2000)). Here, Gupta's *prima facie* case of discrimination, as discussed above, is weak. And although Gupta argues that two of the reasons for the August 2013 suspension are false, she does not argue that the finding that she engaged in malicious gossip about her co-workers is false. More importantly, Gupta provides no evidence from which a reasonable trier of fact could conclude that her ethnicity or national origin influenced or motivated the Defendant's decision to suspend her—a decision that resulted from what appears to have been a reasonably thorough investigation. *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015) ("Employee discipline, as long as it is not conducted in a discriminatory fashion, is a business judgment not reviewed by the courts."); *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("[i]n a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what *motivated* the employer") (internal quotation marks and citations omitted); *see also Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) (finding that plaintiffs must do "more than cite to their mistreatment and ask the court to conclude that it must have been related to their [protected status]"). Therefore, the Court grants the Defendant summary judgment on Gupta's August 2013 discriminatory discipline claim.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment. (ECF No. 42.) The only remaining claim is Plaintiff's failure-to-promote claim based on the Policy Analyst position. The Court also GRANTS Defendant's motion for an extension of time, *nunc pro tunc*, to file its reply brief. (ECF No. 53.)

IT IS SO ORDERED.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                March 24, 2016